MURPHY and another vs. DUNNING and others.

PLEADING: (1.) *Denial in the answer of indorsement of note.*
PROMISSORY NOTE: RAILROAD BOND: (2.) *Transfer of note and mortgage, when an indorsement.* (3.) *Evidence necessary to reverse a finding of fact.* (4.) *Degree of proof required to rescind contract on ground of fraud.* (5.) *Effect of laches where note has passed into hands of innocent holder for value.*

1. Where the complaint avers that defendant's note and mortgage to a railroad company were sold, assigned and delivered to plaintiffs by such company, and the answer merely alleges that said company never *indorsed over said note* to any person *by writing its name thereon for that purpose,* and that said company has at all times refused to *indorse* the note or to do any act which would make it negotiable — this is not a denial of the assignment of the company as alleged in the complaint, nor of the authority of the officers by whom such assignment was made, but merely denies that such assignment was in law an indorsement; and plaintiffs are not put upon proof of the authority of said officers.

2. *Crosby v. Roub* (16 Wis., 616) and *Bange v. Flint* (25 Wis., 544), followed, as to the effect, as an *indorsement,* of the transfer of a note and mortgage attached to a negotiable bond of a railroad company, which recites that said note and mortgage are transferred as security for such bond, and are transferable only in connection with it.

3. To justify the reversal of a finding of fact, on appeal to this court, there

Murphy and another vs. Dunning and others.

should *at least* be *some* preponderance of evidence against such finding.

4. Even when there is no long and unexplained delay in bringing suit for the purpose, a contract will not be rescinded on the ground of fraudulent misrepresentation in procuring it, except upon clear and satisfactory proof.

5. Where there has been such delay, and the contract has passed into the hands of an innocent holder for value, and the fraud is set up and rescission demanded only after suit brought upon the contract, a finding that such fraud is unproven will not be reversed except upon a *very clear and decided* preponderance of evidence against it.

APPEAL from the Circuit Court for *Racine* County.

Action for the foreclosure of a mortgage, instituted originally in Walworth county, and removed by stipulation to Racine county, where the trial was had. The complaint was upon a mortgage executed by the defendants *Dunning* to the Fox River Valley Railroad Company, on the 5th day of June, 1854, to secure the payment of a note of fifteen hundred dollars, of the same date, due ten years thereafter, said note being given in subscription to the capital stock of said railway. The complaint also alleged that before the maturity of said note and mortgage, the Fox River Valley Railroad Company assigned and delivered the same to the plaintiffs, for value. The answer alleged want of consideration for the note and mortgage, fraudulent representations in obtaining the same, and plaintiff's knowledge thereof. The answer further alleged, upon information and belief, "that said railroad company never at any time indorsed over said note to said plaintiffs, or to any other person or persons, whomsoever, by writing its name upon said note for that purpose, and said defendants further allege that said railroad company expressly refused, and at all times has refused, to indorse said note, or to do or perform any other act or thing to make, or which would make said note negotiable; all of which was well known to said plaintiffs at the time of said pretended transfer to them of said note and mortgage."

It appeared in evidence that the note and mortgage were not

indorsed, but that they were accompanied by a bond or agreement, purporting to be signed by the president and secretary of said railway company, under and by virtue of which they were transferred to the plaintiffs. Defendants objected to the introduction of the bond of assignment as evidence, upon the ground that it did not appear that the persons by whom it was signed were authorized to sell and transfer the note and mortgage, but the objection was overruled, and the bond admitted. The evidence upon the question of fraudulent misrepresentation, and the findings of the court, are fully stated in the opinion. Findings for the plaintiffs and judgment of foreclosure, from which the defendants appealed.

*Fish & Lee* (with *Frederic Ullmann*, of counsel), for appellants, argued that, under the charter of the Fox River Railway Company, the negotiation, sale and transfer of mortgages were powers which could only be exercised by the Board of Directors, or by such officers as might be delegated by proper resolution of authority for that purpose. No such resolution of authority to the president and secretary of the company was proven, and those officers had not the power, *virtute officii*, to sell and assign the note and mortgage, in the absence of such express authority. *Hoyt v. Thompson*, 1 Selden, 320; *Marine Bank of the City of New York v. Clements*, 3 Bos., 600; Angell & Ames on Corp., ch. 9, secs. 3, 6 and 8.

*Carpenter & Murphy*, contra, to the point that the form of transfer was sufficient and was properly executed, cited *Crosby v. Roub*, 16 Wis., 616; *Callanan v. Judd*, 23 Wis., 343, 351; *Andrews v. Hart*, 17 Wis., 297; *Rowe v. Table Mountain Water Company*, 10 Cal., 441. Whatever may have been the equities between the original parties, the assignment to plaintiffs being within the law merchant, and before the note was due, they are not prejudiced by such equities. *Crosby v. Roub*, supra; *Callanan v. Judd*, supra.

DIXON, C. J. The point that no authority was shown from

the board of directors to the president and secretary of the railroad company to transfer the note and mortgage, came up by way of objection to the introduction of the bond of assignment and transfer, when offered in evidence by the plaintiffs. It is urged, that a resolution of the board of directors, or some other competent authority from them to the president and secretary to make the assignment of the note and mortgage, should have been shown, before the instrument was admissible in evidence. Assuming that such authority was necessary, and that the president and secretary could not sell or transfer without, we are, nevertheless, of opinion, upon the pleadings, that the objection was not open to the defendants, or that they had waived it by the form and mode of denial in their answer. The complaint charged a sale, assignment and delivery of the note and mortgage to the plaintiffs by *the railroad company*. This was in legal effect averring a valid assignment, or one made in due form of law under the authority of the company. The answer was in these words: " And defendants further say, that they are informed and believe, and, therefore, allege the fact to be, that said railroad company never, at any time, *endorsed over* said note to said plaintiffs, or to any other person or persons whomsoever, *by writing its name upon the said note for that purpose*, and said defendants further allege, that said railroad company expressly refused, and at all times has refused to *endorse* said note, or to do or perform any other act or thing to make, or which should make said note negotiable; all of which was well known to said plaintiffs at the time of said pretended transfer to them of said mortgage." This was clearly no denial of the authority of the president and secretary of the company to make the assignment. It was no denial that the note and mortgage had, in fact, been assigned by the company as charged in the complaint. It was evidently not intended as a denial of the fact of assignment, or of the authority of the officers by whom it was made, but by necessary implication admitted the existence of both. It was only intended as a denial, that the

company "endorsed" the note "by writing its name upon the said note for that purpose," which fact, in the judgment of the pleader, was deemed necessary to "make said note negotiable." It was merely a denial of the negotiation and transfer of the note in that particular form. The cases of *Crosby v. Roub*, 16 Wis., 616, and *Banger v. Flint*, 25 Wis., 544, show that the transfer of the note and mortgage in form, as made, which was by attachment to the negotiable bond of the company, which recited that they were transferred as security for, and should be transferable only in connection with the bond, was an *indorsement* of the note, within the law merchant. If the defendants had intended to raise any question, as to the authority of the president and secretary to make the transfer, so as to require the plaintiffs to show the authority on trial, they should have made such intention known by their pleadings, either by putting the fact distinctly in issue by answer, or at least by a general denial of the facts alleged in the complaint. The answer, if not in words, certainly by inference, admitted the transfer and delivery as alleged in the complaint, and took no issue as to their regularity or validity, except as above stated. It contained no general or specific denial, but only matters in avoidance.

The court below found as facts: "First. That each and all of the facts and circumstances stated in the complaint herein, are true as therein stated, and are proven by the plaintiffs. Second. That all the facts and circumstances and allegations contained in the amended answer of the defendants, William H. Dunning and Jessie M. Dunning, are untrue in fact, and are wholly unproven."

A careful examination of the testimony has failed to convince us that there was such error in the finding of the court with respect to the alleged false and fraudulent representations by means of which the defendants, Dunning and wife, assert and claim that they were induced to, and did execute and deliver the note and mortgage, as will justify us in reversing the judg-

ment on that ground. The testimony is such as, upon fair consideration, will not, in our opinion, authorize a reversal of the finding of the circuit judge in this particular, and an opposite determination and finding of fact by this court upon the same evidence. The court below found as fact that the allegations of the answer in respect of the fraud were untrue and wholly unproven. To justify the reversal of a finding of fact, on appeal to this court, there should, in any case, be a fair preponderance, or at least some preponderance, of evidence against such finding. And in a case circumstanced like the present, where the defense is fraud and misrepresentation in the procurement of the execution of the note and mortgage, which is like a bill in equity to rescind the same on that ground, and in which it must be shown that the party repudiated immediately on discovery of the fraud, and moved diligently for the rescission; and where, also, as appears by the record, the defendants delayed, without any good cause assigned, for the period of ten years and upwards, after the execution and delivery of the note and mortgage, and until after they had been transferred to the plaintiffs, who claim and testify that they are holders in good faith for value without notice, and then, upon the institution of this action by the plaintiffs, for the first time bring forward the objection — in a case so circumstanced we say, we think, to authorize a reversal of the finding of the court below, that the preponderance of evidence against such finding should be very clear and decided. The demand or right to rescind a contract on the ground of fraudulent misrepresentation or concealment, even when unaccompanied by any circumstances of suspicion like those arising from long and unexplained delay to complain or prosecute or otherwise, is one which must in all cases be clearly and satisfactorily established in proof. It is analogous to the case where the object is to turn a deed absolute on its face into a mortgage, or to reform a written instrument on the ground of mistake, and requires nearly, if not the same degree and kind of evidence. See *Kent v. Lasley*, 24 Wis., 654, and

cases there cited, and *McClellan v. Sandford*, 26 Wis., 607.   In the present case the testimony to establish the alleged false and fraudulent representations was solely that of the defendant, *William H. Dunning* himself.   No other testimony was offered or given by the defendants in support of that part of the defense.    Opposed to his testimony was that of the witness, Forbes, the agent of the railroad company, who, *Dunning* testified, made the representations.    Forbes flatly and unqualifiedly contradicted every statement made by *Dunning*, and negatived every allegation of the answer in respect to the false misrepresentations.    He was not impeached or otherwise contradicted than by *Dunning*.    He appears to have been a man of fair intelligence, of considerable property, accustomed to business, and of good character in the community, equally with *Mr. Dunning*. Nothing was shown against the good name or character of either, and the testimony of each, by itself considered, seems fair and credible on the face of the record.    Dunning was interested; Forbes was not.

Now while we need not and do not say that a defense of the kind here presented, may not, or ought not, under any circumstances, to be established by the testimony of the defendant alone, and while also we are not required and do not say that the defendant *Dunning* testified falsely, for we impute nothing of the kind to him, yet we must say upon the record as shown to us, that we cannot reverse the finding and decision of the circuit judge, that no false or fraudulent representations were in fact made in the procurement of the execution of the note and mortgage.   On the contrary, we think we are in duty bound, under the circumstances, to affirm such finding and decision, and, that being affirmed, it follows that the whole judgment must be, regardless of the question whether the plaintiffs had or had not notice of the alleged defense, at the time they purchased and took an assignment for value of the note and mortgage.

*By the Court*—The judgment of the circuit court is accordingly affirmed.