Ornstein v. Yahr & Lange Drug Co. 119 Wis. 429.

ORNSTEIN, Respondent, vs. YAHR & LANGE DRUG COMPANY,. Appellant.

*October 2—October 20, 1903.*

*Master and servant: Entire contract of employment: "Working days," when include Sundays: Wrongful discharge: Election of remedies: Single recovery.*

1. A contract by which plaintiff agreed to act as traveling salesman for defendant from April 1, 1900, to December 31, 1900,. at a salary of $1,000 per year and expenses, and providing that a failure by either party to faithfully carry out his part of the agreement should be sufficient cause for termination of the contract by giving thirty days' notice, is *held* to have been an entire contract, although prior to his discharge plaintiff had been paid in monthly *pro rata* instalments.

2. Under a contract for the employment of a traveling salesman, providing that he should be paid his expenses, ."not to exceed an average of $7 per working day," all Sundays actually spent in the service should be included as working days, in calculating such average.

3. After the wrongful discharge of one employed under an entire contract, he may elect to treat the contract as rescinded and recover on a *quantum meruit* for services actually rendered, or may sue, either before or after the expiration of the agreed term of service, for damages actually resulting from the breach; but an election of either remedy will be a waiver of the other, and one recovery of damages for the breach, though it be only of the *pro rata* amount for one month's service, will be a bar to any subsequent recovery.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Appellant engaged respondent as a traveling salesman for a period beginning April 1 and ending December 31, 1900. The agreement provides in part that he was

"to act in the capacity of a cigar salesman for them, and sell their goods in the territory selected by them, in harmony with their wishes, and in keeping with their instructions from time to time as necessity may demand; for which services they agree to pay him a salary of one thousand ($1,000) dol-

lars per year and expenses, the latter not to exceed an average of seven ($7.) dollars per working day, with the distinct understanding that same shall be kept as much less than this amount as possible and represent them properly.

"Furthermore, it is mutually agreed that a failure on the part of either party to faithfully carry out his part of the contract will be considered sufficient cause for the termination of this contract by giving thirty days' notice."

Respondent worked from April 3d to June 29th. He reported Sunday among the number of his working days when he was actually engaged in working on that day, and included the expenses of that day as the expenses of a working day. It appears that appellant treated the expenses of Sunday as proper in arriving at the total amount of expenses, but insists Sunday should not be included as a "working day" in computing the average daily expenses, which were limited to "seven ($7) dollars per working day." Including Sunday, the expenses per working day for the whole period during which respondent was actually employed average less than $7; excluding it, the amount is more.

On July 1st respondent was notified that his services were no longer desired, for the reason that he had breached the contract by exceeding the average daily expense specified therein. In August he brought an action in justice's court, and recovered an amount equal to a month's *pro rata* salary. After the contract period had expired, this action was brought to recover damages for the breach of the contract in wrongfully dismissing him from service. Respondent alleged his damages were equal to the difference between the amount received and the total salary he was to receive for the period of service. Judgment was awarded for that amount, with costs, amounting to $464.15. From that judgment this appeal is taken.

For the appellant there was a brief by *Nath. Pereles & Sons,* and oral argument by *C. F. Hunter.*

*W. B. Rubin,* for the respondent.

SIEBECKER, J. The terms of employment of respondent by appellant are embodied in a written contract specifying the nature of the service, the compensation to be paid therefor, and the amount to be allowed as expenses in rendering the services. The contract must be treated as embodying the agreements of the parties concerning the employment, and fixing the duties which devolve upon either party arising from this relationship. It is important at the outset to ascertain whether this agreement admits of being treated in law as an entire and indivisible one, or as one separable, divisible, and apportionable. This agreement contains the express promises whereby the appellant engaged respondent for the definite period beginning April 1, 1900, and ending December 31, 1900, to represent them and render the services of a traveling salesman in the territory to be selected by them under their instructions and "for which services they agree to pay him the salary of one thousand ($1,000) dollars per year and expenses, the latter not to exceed an average of seven ($7) dollars per working day." The respondent agreed to accept such employment and render service in the most advantageous and profitable manner. It is further stipulated that a failure by either party to fulfill this agreement shall be grounds for its termination upon thirty days' notice.

The intent of the parties is manifest by the terms and condition of the agreement. A consideration thereof discloses the fact that the mutual obligations imposed were concurrent acts, requiring each party to perform his part, and that an entire fulfilment of the promise by either preceded the right to compel performance on the part of the other. The amount of the consideration to be paid by the appellant is certain and definite and is dependent upon the performance of the services by respondent for the fixed period. The services for the period defined are the consideration of the promise to pay the salary. Under these circumstances the benefits and value of

SUPREME COURT OF WISCONSIN. [Oct.

the services for a part of the period cannot, in legal contemplation, be apportioned on a *pro rata* basis. If either party desired such an apportionment, he should have insisted that the terms of the agreement expressly provide for it. It is argued that the terms of the contract as written should be held apportionable upon the ground that the sums paid thereon by appellants were the *pro rata* amount for the service rendered before payment. This cannot control, since the terms of the agreement are plain and definite and readily understood under rules applicable to the construction of such agreements. It has frequently been held that, if there is an express promise to pay a definite sum as compensation for a prescribed period of service, it is an entire promise made for the whole service of the contracted period, and if instalments are paid they are not in payment of so much of the services rendered to the date of payment, but are merely an advance of part payment for the whole period for the convenience of him receiving it. We must hold that the contract is entire, under the decisions of this court beginning at an early date in *Gordon v. Brewster*, 7 Wis. 355, and continuing to the recent case of *Glidden v. Meyer*, 110 Wis. 1, 85 N. W. 656. *Jackson v. Cleveland*, 15 Wis. 107; *Trowbridge v. Barrett*, 30 Wis. 661; *Jennings v. Lyons*, 39 Wis. 553; *La Coursier v. Russell*, 82 Wis. 265, 52 N. W. 176; *Winkler v. Racine W. & C. Co.* 99 Wis. 184, 74 N. W. 793. See, also, 2 Parsons, Contracts, 633, 634.

Exception is taken to the court's construction of the provisions of the contract pertaining to expenses of respondent while in the performance of his services. The contract states in terms that respondent's expenses connected with the service were to be paid in addition to the salary, and that such expenses were "not to exceed an average of seven ($7) dollars per working day." It is contended by appellant that no Sunday should be included to determine the total number of days for which expenses are to be allowed, though respondent

actually spent Sunday in the service away from his home.
The nature of the employment and the services to be per-
formed must be considered in giving legal significance to
this provision.  Obviously, respondent was to travel on the
road, which required him to spend some of his Sundays
away from his home, subjecting him to the usual daily ex-
penses of his trip, and when required to travel by railway on
Sunday, as appears the business might actually demand, his
expenses would be no different nor less necessary than on
other days.  It must be assumed that the parties contracted
having these circumstances in view.  It was proper and com-
petent to make provision for payment of expenses for Sun-
days actually spent in the service as "working days" in fixing
the amount to be allowed therefor.  All Sundays actually
spent in the service we think must be included in calculating
the average of expense per "working day."  Under this view
we find that the expenses incurred by respondent while in the
actual service were less than the sum of $7 per day.  From
this it follows that respondent had not breached the contract,
as claimed by appellant, on July 1st, when they notified him
that his services were no longer desired.

Respondent tendered his services and offered to continue
in his employment after such notice, but was prevented by
appellant.  The evidence shows that he was voluntarily paid
in full for the services actually rendered by him before July
1st, and that he rendered no services thereafter.  He admits
that he instituted an action against appellant in the month
of August, after being dismissed from the service.  It is as-
serted in his behalf that this admission cannot be held to bind
him as having recovered any damages sought to be recovered
in *this* action.  It sufficiently appears from his evidence that
he brought that action after his discharge; that he recovered
an amount equal to a month's *pro rata* salary, with costs, and
that the same was paid him by appellant.  Nothing appears
to contradict this state of facts.  The question, then, arises,

What are the legal results consequent on this recovery by respondent?

Since there was an entire contract, a material breach on the one side as to any part of its terms justified a refusal by the other side to be thereafter bound by any of its provisions. The wrongful dismissal of respondent from service by preventing him from continuing in the employment constituted a breach of the entire contract, and furnished him the occasion to invoke legal relief. He being free from fault, the law awarded him two remedies. He had a right to act on the breach and declare the contract rescinded, and recover upon *quantum meruit* for any services actually rendered; or bring his action at any time before or after the expiration of the prescribed period of service fixed by the contract for the damages actually resulting to him from the breach. With these two alternatives before him, he was required to elect which remedy he would pursue, and whichever one he adopted was in itself a waiver of the other, for the law will not permit him to pursue two remedies to recover damages flowing from one wrong. When he pursued either remedy, he exercised the legal right of choice between these remedies, of which he was entitled to but one, and when he elected the one he waived his right to the other. *James v. Allen Co.* 44 Ohio St. 226, 6 N. E. 246; 2 Smith's Lead. Cas. p. 9 *et seq.,* and cases cited.

It is not suggested that respondent treated the contract as rescinded and sought recovery before the justice upon *quantum meruit* for services actually rendered. This he could not do consistently with his subsequent course of action. Such rescission would in itself declare the contract abrogated, and no action for damages for its breach could be maintained. He expressly alleges in his complaint in this action "that by reason of such wrongful breach of the contract by said defendant, said plaintiff sustained damages in the sum of $416.65," and demands judgment therefor, with costs of ac-

tion. Having elected to stand on his right for damages by reason of the breach, he was confined to that remedy before a justice, and he is presumed to have exhausted his damages in that action. There being only one breach, but one cause of action could arise therefor. It became his legal duty to include all his damages in one recovery. The law does not permit a splitting up of a cause of action into different recoveries. The principle is clearly stated in the case of *James v. Allen Co., supra,* in the following language:

"Where an employee is wrongfully dismissed, but all wages actually earned up to that time are paid, the only action the employee has, whether he brings it at once or waits until the entire period of hire had expired, is one for damages for breach of the contract. And the measure of damages will be the loss or injury occasioned by such a breach, and one recovery upon such claim, whether the damages are denominated 'loss of wages' or 'damages for breach,' is a bar to a future recovery."

*Winkler v. Racine W. & C. Co.* 99 Wis. 184, 74 N. W. 793, and cases cited; Wood, Master & S. 246; *Keedy v. Long,* 71 Md. 385, 18 Atl. 704; *Olmstead v. Bach,* 78 Md. 132, 27 Atl. 501; *Howard v. Daly,* 61 N. Y. 362; *Clossman v. Lacoste,* 28 Eng. L. & E. 140; 2 Smith's Lead. Cas. 41; *Lake Shore & M. S. R. Co. v. Richards,* 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33; *Hosmer v. Wilson,* 7 Mich. 294; *Goodman v. Pocock,* 15 Q. B. 576; *Davis v. Ayres,* 9 Ala. 292.

We must hold that the contract for services was an entire one; that respondent's election to prosecute the action before the justice exhausted his rights to sue on a breach of the contract, and constitutes a bar to the recovery sought to be enforced in this action.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to enter judgment dismissing respondent's complaint.